The **DEL STATE BANK,** an Oklahoma
Banking Corporation, Appellant,

v.

**David F. PATTON,** Appellee.

No. 44388.

Supreme Court of Oklahoma.

July 10, 1973.

As Corrected Sept. 11, 1973.

Rehearing Denied Sept. 11, 1973.

Garrett, Pool & Amis by Robert W. Amis, Del City, for appellant.

Shirk, Withington, Work & Robinson by James E. Work, Oklahoma City, for appellee.

WILLIAMS, Vice Chief Justice.

This is an appeal by Del State Bank, plaintiff in the trial court, from judgment for David F. Patton, one of several defendants, in the bank's action upon a promissory note. The other defendants were Royal Mechanical Contractors, Inc., Roy Melton and Al Fatherree. Royal was the maker of the note sued on, and Melton, Fatherree and Patton were endorsers. Melton and Fatherree were officers of the corporate defendant and Patton was the holder of 40% of the corporation's stock. No appeal was taken from the trial court's three defendants.

There is no dispute as to the pertinent facts. Defendant Patton, at the request of Melton and Fatherree, had endorsed a prior short-term note for $30,000 because the bank refused to lend that amount to Royal without endorsers. Thereafter the note became due and Patton was notified by the bank that it had not been paid. Patton became concerned about the financial condition of Royal at that time, and, as a condition for agreeing to endorse a renewal note, insisted that the indebtedness be reduced in the amount of $5000. This was done, and on July 26th Patton endorsed the renewal note (the one sued on in this case) in the amount of $25,000. The note was payable in a little less than two months and provided, among other things, that the "makers, sureties, endorsers and guarantors * * * expressly waive notice of presentment for payment, notice, protest and notice of protest and of non-payment of said note".

In the course of his investigation of Royal's financial condition in connection with the renewal of the note, Patton learned that a $23,000 payment from Dunning Construction Company would be received by Royal and deposited in its account at the Del State Bank on July 27th, and he insisted that Melton and Fatherree apply this amount on the note to the bank he had endorsed on July 26th. Accordingly, they took a check for $23,000, to apply on the note, to the bank on the morning of the 27th. Mr. Tague, the vice president with whom they had been dealing and who was familiar with Royal's financial affairs, was busy when they arrived. After waiting a short while to see Tague, Melton or Fatherree went in to his office, left the check with him with directions to apply it on the note and then left for a meeting. Mr. Tague received the check and it remained on his desk.

■■ Later in the day, after they had received some advice from an attorney, Milton and Fatherree decided they wanted to apply the proceeds of the Dunning check on some unpaid taxes owed by Royal, and called Tague, or had an office secretary call him, with directions to hold up the payment on the note, so they could use the proceeds of the Dunning check for tax payments. Since the check had not been posted or otherwise acted upon, Del State Bank was required to honor this stop-payment order; see 12A O.S.1971, § 4–403. There is no evidence that any of the things listed in 12A O.S.1971, § 4–303, which might have justified the bank in ignoring the stop-payment order, had happened. In this connection, note that "acceptance", under 12A O.S.1971, § 3–410, means more than mere physical acceptance and must be in writing.

Late in the afternoon Mr. Fatherree came to the bank, picked up the $23,000 check that was to have been applied on the note, gave the bank new checks in the

amount of about $19,000 and received therefor cashier's checks made payable to the Internal Revenue Service and other tax-gathering agencies.

Two days later (July 29th) Del State Bank learned that a stop-payment order had been given by Dunning on its check to Royal (the order was later withdrawn). Since Del State Bank had already issued the cashier's checks against the expected proceeds of the Dunning check to Royal, Tague was alarmed and called Patton to tell him about it. During the conversation Patton learned for the first time that the $23,000 check from Royal to the bank had not been applied on the note. In answer to Patton's question as to why he was not notified, Tague replied "Well, I just assumed you knew about it".

Three days after that (Aug. 1st) United States Fidelity and Guaranty Company, the surety upon certain performance bonds for Royal, filed a federal court action for the appointment of a receiver for Royal, alleging that Royal had notified USF & G by letter dated July 27th that it was financially unable to complete its contracts, and that Royal had in fact defaulted on such contracts. Patton, the appellee in the matter now before this Court, was also made a defendant in the federal court action, because he had allegedly executed an indemnity agreement in connection with Royal's application to USF & G for a performance bond.

Upon learning of the receivership action, Del State Bank exercised its right of set-off as to the small amount then in Royal's checking account and, on September 13th, filed the action upon the promissory note which led to the appeal now before this Court, alleging that by reason of the receivership, the balance on the note was due and unpaid. The bank also intervened in the federal court receivership action, and Royal's answer in the action from which this appeal arose was later filed by the receiver appointed in the federal action.

From the factual standpoint, Patton's defense depends principally upon a phone call he made to Tague, the banker, on July 27th, after the $23,000 check to apply on the note had been delivered to the bank but before the stop-payment order had been given. Although Tague could not remember the conversation, he did not deny that it occurred; Patton's evidence with regard thereto is therefore uncontradicted.

It was to the effect that about noon on July 27th, Melton called Mr. Tague at the bank and handed the phone to Patton. Patton explained to Tague that Melton and Fatherree had told him they had paid $23,000 on the $25,000 note, and that Patton wanted "to verify that this was a fact". Tague told him the payment had been received, leaving a balance of $2,000; Patton did not know whether the payment was made "by cash or check, or how".

Patton's testimony in that regard is supported by that of a certified public accountant who worked for him, Mr. Kirch. On August 2nd, after the receivership action had been filed, Patton took Kirch to the bank to examine the bank's records concerning the note and Royal's account. While they were there, Patton asked Tague to recount for Kirch the events of July 27th, particularly "so far as the check on the note" was concerned. Tague gave Kirch a full account of what happened, including the fact that he verified receipt of the $23,000 over the phone in the conversation with Patton. He said the check had never been posted because of what transpired later on in the day. Kirch verified this. From the testimony as to the phone conversation between Patton and Tague on July 27th, it is clear that Patton's purpose was, as he testified, to verify that Melton and Fatherree had forwarded the $23,000 to the bank, and not to determine whether the bank had actually credited the payment in writing on the note. We find nothing in the conversation to justify a conclusion by Patton that the bank, through Tague, had committed itself to treat the mere physical receipt of the check, without more, as a completed $23,000 payment on

the note regardless of whether the check were later dishonored in any way.

In its brief in this Court, the bank argues (1) that it was required to honor the stop-payment order on the $23,000 check; (2) that the check was at most conditional payment only, and that the liability of Patton was revived when the stop-payment order was received; (3) that the bank was under no duty to notify Patton that payment had been stopped on the check; (4) that Patton was not discharged from liability by the alleged failure of the bank to pursue its rights in the collateral pledged by Royal; and (5) that Patton was not entitled to exoneration under any equitable theory.

We agree with this line of argument. In these transactions, the bank was acting in two different capacities. As to Royal's checking account, it was the drawee bank; as to the $25,000 note, it was Royal's creditor.

Under the uncontradicted facts in this case and 12A O.S.1971, § 3–409, the check did not of itself operate as an assignment of funds in the hands of the drawee bank therefore, in the absence of the written acceptance required by § 3–410 of that title, receipt of the $23,000 check was conditional payment only, which became a nullity when payment was stopped. The bank, as Royal's creditor, was then in the position of holding a check upon which payment had been stopped. It is not suggested that a creditor, merely by receiving a check upon which payment is later stopped, releases from liability the endorsers or sureties upon the same obligation.

█ Under the facts in this case, the bank was under no duty to notify Patton that payment had been stopped on the $23,000 check, or to pursue the collateral pledged by Royal when the note was made. Since Patton was not, in any capacity, a party to the $23,000 check, his rights as regards notice are governed by the provisions of the $25,000 note. As we have seen, the note contained an express waiver of notice which was binding upon endorsers. It also contained an express waiver of the right to have the bank pursue the collateral, and a clause in which endorsers expressly released the bank "from any and all liability for collection or failure to collect the said security".

Under 12A O.S.1971, §§ 4–104(h) and 4–202(2), the bank had until its midnight deadline to act upon the $23,000 check; it therefore cannot be charged with negligence or inequitable conduct in failing to post the check to Royal's account, or to credit the payment in writing upon the note, before the stop-payment order was received.

In his answer, defendant Patton pleaded, among other things, a general denial with affirmative admissions of the execution and endorsement of the $25,000 note. He also pleaded that after he had caused Melton and Fatherree to make the $23,000 payment, they induced plaintiff bank to "undo" said payment and allow Royal to use the proceeds of the Dunning check to pay taxes. He alleged that he was entitled to the "complete defenses" of estoppel, waiver, payment or tender of payment, inequitable conduct by plaintiff bank, laches, and dereliction of fiduciary duty by plaintiff.

The arguments raised in the answer brief in support of the above defenses are all based upon either or both of two premises, to-wit: that (1) insofar as defendant Patton was concerned, payment of the $23,000 was complete and final upon the physical receipt by the bank of the $23,000 check, or at least after the telephone conversation between Patton and Tague; and that (2) the bank thereafter voluntarily and of its own accord returned the payment to Royal and permitted the proceeds of the Dunning check to be used for tax payments.

We are unable to agree. The check did not of itself operate as an assignment of funds in the hands of the drawee (§ 3–409, supra) drawee bank did not become liable on the check by accepting it within the meaning of § 3–410, supra, and nothing in

the telephone conversation between Patton and Tague justified a conclusion to the contrary. Therefore it cannot be said that the payment represented by the $23,000 check ever became final and complete. Also, under the uncontradicted facts in this case, Royal had the unqualified right to stop payment on the check. Since the bank had done none of the things listed in 12A O.S.1971 § 4–303(a) to (e), it was required as a matter of law to honor the stop-payment order. It therefore cannot be said that the bank *voluntarily* returned the $23,000 check to Royal.

We hold that under the uncontradicted evidence in this case and the applicable law, plaintiff bank was entitled to judgment against defendant Patton.

The trial court's judgment in favor of Patton is therefore reversed and vacated and the cause is remanded with directions to render judgment for the bank and against Patton.

DAVISON, C. J., and LAVENDER, SIMMS and DOOLIN, JJ., concur.

BERRY, IRWIN, HODGES and BARNES, JJ., dissent.